## Case No. 10,428.

### ODELL v. FLOOD et al.

[8 Ben. 543.][1]

District Court, S. D. New York. Nov., 1876.

FRAUDULENT TRANSFERS—SECURITY FOR ANTECEDENT DEBT.

F., being insolvent and within six months previous to his being adjudged a bankrupt, made a conveyance of real estate to his wife through A., the consideration alleged being moneys previously given to F. by his wife, for which no evidence of indebtedness existed, and which had always been treated by him as his own property, with her consent. The wife had reasonable cause to believe that the conveyance was made by F. in contemplation of insolvency, and knew that the transfer was made to evade the bankruptcy act. After this conveyance F. took measures to build a house on the premises so conveyed, and for that purpose he bought lumber of J. E. P., holding himself out to J. E. P. as being the owner of the land. J. E. P. afterwards learned of the conveyance by F. to his wife, and, at his solicitation, F. and his wife joined in a mortgage of the premises to him to secure the amount due for the lumber, J. E. P. knowing at the time that F. had deceived him in the matter and that F. was not paying others whom he owed for building the house. An assignee in bankruptcy having been appointed, filed a bill to set aside the conveyances and the mortgage: Held, that the conveyance, must be set aside; that J. E. P., under the circumstances, did not occupy the position of a bona fide purchaser without notice.

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

· 2. Whether J. E. P. could have acquired a mechanic's lien on the premises for the lumber, or not, he had not done·so, and he had acquired no right as against the other creditors of F.

This was a bill in equity filed by [James B. Odell] the assignee in bankruptcy of John Flood, to set aside certain conveyances of and a mortgage on real estate. The bill alleged that Flood was adjudged a bankrupt on the 3rd of January, 1874; that, on June 24th, 1873, Flood had made a conveyance to Alanson J. Prime of certain real estate owned by him at Yonkers; that Prime, on the same day, conveyed it to Margaret Flood, the wife of John Flood; that Flood was then insolvent to the knowledge of his wife and of Prime; and that, on the 15th of December, 1873, Flood and his wife mortgaged the premises to·Jacob E. Parsons with the intent to give Parsons a preference. The circumstances under which Parsons obtained the mortgage in question are fully detailed in the opinion. The case was heard on bill and answer and proofs.

Charles W. Seymour, for plaintiff.
D. McMahon, for defendants.

BLATCHFORD, District Judge. It is impossible to resist the conclusion, on the evidence, that the transfer of the real estate by John Flood through Mr. Prime to Margaret Flood was entirely without consideration, and was an attempt by him to place his property out of the reach of his creditors. There was not subsisting, at the time, any bona fide recognized relation of debtor and creditor between John Flood and his wife. Whatever moneys had passed from her hands into his, whether such sum as she originally gave him in England or such moneys as she earned by her labor in various ways, had been treated by him always as part of his own property, with her consent, and no claim of indebtedness existed, down to the time he placed this real estate in his wife's name. This transaction took place within six months before the petition in bankruptcy was filed. The evidence shows that the bankrupt, in making this transfer of his real estate, was acting in contemplation of insolvency and that Mrs. Flood had reasonable cause to believe that her husband was acting in contemplation of insolvency and knew that the transfer was made with a view to evade the provisions of the bankruptcy act [14 Stat. 517].

The most important question in this case relates to the mortgage held by the defendant Parsons. The deeds by which the transfer to Mrs. Flood was effected were put on record on the 25th of June, 1873. During the summer of 1873, the bankrupt took measures to build a house upon the land he had transferred to his wife. With this view he purchased lumber for the house from Parsons, concealing from Parsons the fact that the land had been conveyed to Mrs. Flood and holding himself out to Parsons as still

the owner of the land. By November 20th, 1873, he owed Parsons for such lumber, beyond the sum of $158 which he had paid on account, the sum of $566.69. For this he gave to Parsons three notes, ante-dated to November 1st, 1873, two for $150 each, due severally at two and three months from date, and one for $266.69, due at four months from date. After that and prior to December 10th, 1873, the indebtedness of the bankrupt to Parsons for lumber was increased $26.26. After that, Parsons learned that the bankrupt had conveyed the property to his wife, and, at his solicitation, the bankrupt and his wife executed to him a mortgage on the property, on the 13th of December, 1873, to secure the payment of the sum of $602.95, being the amount due for the lumber, and the sum of $10 for the expense of drawing the papers. The petition in bankruptcy was filed on the 22nd of December, 1873.

It is true that Parsons was deceived by the bankrupt as to the ownership of the land when he furnished the lumber, and that he furnished it believing that the bankrupt owned the land; and it may well be that he would not have furnished it on the order of the bankrupt if he had supposed that the bankrupt's wife held the title to the land, and that he had an idea that, as he was furnishing the lumber to the owner of the land, to build a house on the land, he could, if necessary, secure a mechanic's lien on the land and building for the price of the lumber. But the deeds, whereby the title was placed in the bankrupt's wife, were on record, and Parsons thus had the means of learning that the title had passed from the bankrupt, before he furnished any of the lumber. When he learned, after the 9th of December, that the property had been transferred to the bankrupt's wife, he chose to waive all other remedy and take the mortgage. At the same time that he learned that the bankrupt's wife held the title to the land, he learned also that the bankrupt was not paying others whom he owed for work in building the house, and he knew that the bankrupt had deceived him and had acted dishonestly, and he told him so. He was clearly put on inquiry, before taking the mortgage, as to the circumstances under which the transfer was made to the wife, and he parted with no property or money as a present consideration for the mortgage. He does not occupy the position of a bona fide purchaser without notice. Sedgwick v. Place [Case No. 12,621].

It is urged that Parsons, if he had not received the mortgage, would have placed a statute lien on the premises, and that, therefore, he is to be regarded as having merely put one security in the place of another. But he had in fact placed no lien on the premises, and the mortgage was not substituted for any other existing lien. Moreover, it is difficult to see how any other lien created on the 13th of December, under the circumstances, in favor of Parsons and against

the land as owned by the wife, would have been of any more avail as against the plaintiff, than the mortgage given by the wife. Whatever inchoate unperfected lien, if any, Parsons may have had a right to, in respect of the land and the building on it, based on the fact that lumber furnished by him entered into the construction of the building, whoever was the owner of the land, Parsons acquired no perfected lien before the rights of the general creditors, represented by the plaintiff in this suit, intervened. He, himself, is one of such general creditors.

There must be a decree for the plaintiff according to the prayer of the bill, with costs against the defendants who have answered.